```
                UNITED STATES DISTRICT COURT
              FOR THE DISTRICT OF RHODE ISLAND


JONATHAN L. MOORE,                :
          Plaintiff,              :
                                  :
     v.                           :    CA 09-452 ML
                                  :
JOHN DOUGLASS and                 :
ELICIA PETTY,                     :
          Defendants.             :
```

**REPORT AND RECOMMENDATION**

David L. Martin, United States Magistrate Judge

Before the Court is the Motion for Summary Judgment (Docket ("Dkt.") #32) ("Motion for Summary Judgment" or "Motion") filed by Plaintiff Jonathan L. Moore ("Plaintiff" or "Moore"),[1] an inmate at the Adult Correctional Institutions ("A.C.I.") in Cranston, Rhode Island, who has brought this action pro se. The Motion has been referred to me for preliminary review, findings, and recommended disposition pursuant to 28 U.S.C. § 636(b)(1)(B). For the reasons stated below, I recommend that the Motion be denied because there are genuine issues of material fact.

---

[1] Plaintiff filed a previous Motion for Summary Judgment (Dkt. #11) and a Motion for Judgment on the Pleadings (Dkt. #16), but those motions were ruled moot by Chief Judge Mary M. Lisi on May 21, 2010. See Order (Dkt. #34) (accepting May 3, 2010, Report and Recommendation (Dkt. #31) of this Magistrate Judge).

## I.  Facts[2] and Travel

On a date not specified in his Amended Complaint,[3] Plaintiff commenced a civil suit pursuant to 42 U.S.C. § 1983 against correctional officers, employees, and officials of the A.C.I. See Amended Complaint at 2.[4]  In the suit, Plaintiff alleged, among other claims, that certain correctional officers had filed false disciplinary charges against him.  See id.  Specifically, Plaintiff alleged that they had falsely charged him with assaulting another inmate, Larry Smith ("Smith"), on or about January 14, 2009.  See id.  To further his lawsuit, Plaintiff obtained an affidavit from Smith, dated August 18, 2009, which allegedly refuted the disciplinary charges.  See id.  Sometime thereafter, John Douglass ("Douglass"), a correctional officer, entered Plaintiff's cell and allegedly stole the affidavit.  See id.  Plaintiff avers that this action inhibited his ability to pursue a legal claim, see id., and deprived him of his due process right of access to the courts, see id. at 3.  Douglass

---

[2] The facts are taken from Plaintiff's Amended Complaint (Dkt. #29).

[3] Plaintiff entitled his Amended Complaint "(PROPOSED) AMENDED COMPLAINT."  See Amended Complaint.

[4] Plaintiff does not identify the lawsuit by its title or case number.  See Amended Complaint.  However, court records reflect that on September 17, 2009, the Clerk's Office received Plaintiff's complaint in Jonathan L. Moore v. James Weeden, et al., CA 09-434 S. Nineteen correctional officers, employees, and officials of the Rhode Island Department of Corrections were named as defendants in this action.  See Moore v. Weeden, et al., CA 09-434 S, Report and Recommendation (Dkt. #43) of 8/19/10 (Hagopian, M.J.) at 1.

2

additionally filed an allegedly false disciplinary charge against Plaintiff which stated that Plaintiff was in possession of Smith's legal materials. See id. Plaintiff claims that Douglass filed the false disciplinary charge in retaliation for Plaintiff having engaged in protected activities, referring presumably to Plaintiff's prosecution of the prior lawsuit. See id. at 3-4. As a result of this disciplinary charge, Plaintiff was punished with five days of disciplinary confinement which also hindered his ability to engage in protected activities. See id. at 4. Because of Douglass' actions, Plaintiff filed a grievance against him on September 10, 2009. See id.

On September 15, 2010, Correction Officer Elicia Petty ("Petty") searched Plaintiff's cell, allegedly in retaliation for the grievance which Plaintiff had filed against Douglass five days earlier. See id. Petty took Plaintiff's bedding, and for forty-eights hours Plaintiff was without any bedding. See id. Plaintiff alleges that he sustained rashes and mattress burns because Petty was deliberately indifferent to providing Plaintiff with life's basic necessities. See id. Petty also filed an allegedly false disciplinary report against Plaintiff, stating that he was in possession of two torn bed sheets. See id. at 4-5. Plaintiff claims that Petty did so in retaliation for Plaintiff petitioning the government for a redress of grievances

against correctional officers.[5]  See id. at 4-5.  The disciplinary charge (Discipline No. 000087661) was subsequently dismissed.  See id. at 5.

Plaintiff filed his Complaint (Dkt. #1) in the instant action on September 24, 2009.  See Dkt.  Just shy of two months later, on November 20, 2009, Petty allegedly pepper sprayed Plaintiff in his cell without justification.  See Amended Complaint at 5.  Plaintiff alleges that Petty did so in retaliation for Plaintiff having filed the instant lawsuit and that the pepper spraying constituted an unconstitutional application of excessive force.  See id. at 5-6.  Plaintiff further alleges that Petty filed disciplinary charges[6] against him in connection with this incident and that this action was also "retaliatory."[7]  Id. at 5.  According to Plaintiff, Petty's

---

[5] It is unclear from the Amended Complaint whether this "petitioning," Amended Complaint at 5, refers to Plaintiff's action in filing a grievance against Douglass on September 10, 2009, see id. at 4, or his earlier filing of the lawsuit, see id. at 2, or to both actions.

[6] The Court uses the plural "charges" because that is the term which Plaintiff uses, see Amended Complaint at 5, even though it appears from other averments in the pleading that Petty only filed one disciplinary charge against Plaintiff in connection with this incident.

[7] In making this statement, the Court reads the Amended Complaint generously, see de Aza-Paez v. United States, 343 F.3d. 552, 553 (1st Cir. 2003)(noting "the court's obligation to read pro se complaints generously"), because Plaintiff does not explicitly state that the filing of the "disciplinary charges," Amended Complaint at 5, was "retaliatory," id.  In point of fact, Plaintiff refers to the "disciplinary charges," id., in one paragraph, see id., and three paragraphs later refers to "adverse actions against me," id. at 6.  The Court construes "adverse actions against me," id., as encompassing

4

account of the incident in the disciplinary charge (Discipline No. 000091874) demonstrates that the employment of pepper spray against him was a grossly disproportionate response to the situation. See id. at 5-6.

Although Douglass and Petty (collectively "Defendants") had yet to answer the Complaint, Plaintiff moved on January 22, 2010, for summary judgment, see Motion for Summary Judgment (Dkt. #11) ("First Summary Judgment Motion"), and on February 16, 2010, for judgment on the pleadings, see Motion for Judgment on the Pleadings (Dkt. #16). The Court refers to these motions as the "Prior Dispositive Motions."[8]

Defendants answered the Complaint on February 18, 2010. See Dkt. On March 9, 2010, this Magistrate Judge ordered Defendants to file responses to the Prior Dispositive Motions. See Order to Defendants to File Responses (Dkt. #20) ("Order of 3/9/10"). The same day, Douglass moved Plaintiff to more adverse conditions of confinement, see Amended Complaint at 6-7, namely a corner cell

---

both the pepper spraying and the filing of disciplinary charges.

[8] A dispositive motion is a motion which, if granted, would end the case with a judgment in favor of the moving party. Thus, the Motion for Summary Judgment (Dkt. #11) ("First Summary Judgment Motion") and the Motion for Judgment on the Pleadings (Dkt. #16) are both dispositive motions. See Baillargeon v. Drug Enforcement Admin., C.A. No. 07-271 S, 2010 WL 1490839, at *2 (D.R.I. Apr. 12, 2010) (stating that a "motion for judgment on the pleadings is a dispositive motion"); Cranston Sch. Dist. v. Q.D., C.A. No. 06-538ML, 2008 WL 4145980, at *6 (D.R.I. Sept. 8, 2008)("Summary Judgment is a dispositive motion"). Hence, the Court identifies them collectively as the "Prior Dispositive Motions."

blocked by a brick wall which allegedly "deprive[d] [Plaintiff] of all human contact," id. at 7.  Douglass also filed an allegedly false disciplinary charge against Plaintiff which implied that he had detached a bolt from the wall.[9]  See id. Plaintiff alleges that Douglass took these actions in retaliation for Plaintiff having filed the lawsuit and the Prior Dispositive Motions which resulted in the Order of 3/9/10.  See id. Plaintiff additionally alleges that, after Douglass filed the false disciplinary charge, Plaintiff was "placed on locked in fed in (LFI) status which directly mirrors disciplinary confinement," id., from March 9, 2010, to March 23, 2010, see id.  This action too, according to Plaintiff, was in retaliation for his exercise of "protected speech," id., and for petitioning the government for a redress of grievances, see id.

In March 2010 Defendants filed their objections to the Prior Dispositive Motions.  See Defendants' Objection to Plaintiff's Motion for Judgment on the Pleading[s] (Dkt. #22); Defendants' Objection to Plaintiff's Motion for Summary Judgment (Dkt. #23). A hearing on the Prior Dispositive Motions was held on April 13,

---

[9] Plaintiff's allegations with respect to his placement in the cell which was "blocked by brick wall ...," Amended Complaint at 7, are somewhat inconsistent.  He alleges first that "Douglass moved me to more adverse conditions of confinement in the absence of any disciplinary action being taken against me," id. at 6-7, but then alleges that "Douglass intentionally filed false disciplinary charges against me implying that I detached a bolt from a wall ...," id. at 7 (citing Discipline No. 000097699).  Thus, the latter allegation suggests that Douglass moved Plaintiff to a different cell because Plaintiff had allegedly loosened a bolt in his previous cell.

6

2010. See Dkt. At the hearing, the Court noted that Plaintiff had filed a Motion to Amend (Doc. #19), see Report and Recommendation (Dkt. #31) ("R&R of 5/3/10") at 1, and gave Plaintiff the option of foregoing the hearing on the Prior Dispositive Motions so that he could file an amended complaint. See id. Plaintiff elected to do so. See id. Accordingly, immediately after the hearing, the Court granted Plaintiff's Motion to Amend to the extent that Plaintiff was granted permission to file an amended complaint which set forth all his claims in a single document. See id.; see also Order re Rulings Made at April 13, 2010, Hearing (Dkt. #28).

On April 19, 2010, Plaintiff filed his Amended Complaint (Dkt. #29), see Dkt., which was answered by Defendants on April 22, 2010, see id.; see also Answer to Amended Complaint (Dkt. #30). Plaintiff filed the instant Motion for Summary Judgment on May 5, 2010. See Dkt. On May 24, 2010, Defendants' objection to the Motion was filed. See id.; see also Defenda[n]ts' Objection to Plaintiff's Motion for Summary Judgment (Dkt. #35). A hearing on the Motion was held on June 15, 2010. See Dkt. Thereafter, the matter was taken under advisement.

## II.  Summary Judgment Standard

"Summary judgment is appropriate if 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no

7

genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" Commercial Union Ins. Co. v. Pesante, 459 F.3d 34, 37 (1st Cir. 2006)(quoting Fed. R. Civ. P. 56(c)); accord Kearney v. Town of Wareham, 316 F.3d 18, 21 (1st Cir. 2002). "A dispute is genuine if the evidence about the fact is such that a reasonable jury could resolve the point in the favor of the non-moving party. A fact is material if it carries with it the potential to affect the outcome of the suit under the applicable law." Santiago-Ramos v. Centennial P.R. Wireless Corp., 217 F.3d 46, 52 (1st Cir. 2000)(quoting Sánchez v. Alvarado, 101 F.3d 223, 227 (1st Cir. 1996)).

In ruling on a motion for summary judgment, the court must examine the record evidence "in the light most favorable to, and drawing all reasonable inferences in favor of, the nonmoving party." Feliciano de la Cruz v. El Conquistador Resort & Country Club, 218 F.3d 1, 5 (1st Cir. 2000)(citing Mulero-Rodriguez v. Ponte, Inc., 98 F.3d 670, 672 (1st Cir. 1996)). The non-moving party may not rest merely upon the allegations or denials in its pleading, but must set forth specific facts showing that a genuine issue of material fact exists as to each issue upon which it would bear the ultimate burden of proof at trial. See Santiago-Ramos v. Centennial P.R. Wireless Corp., 217 F.3d at 53 (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256, 106 S.Ct. 2505 (1986)). "[T]o defeat a properly supported motion for

summary judgment, the nonmoving party must establish a trial-worthy issue by presenting enough competent evidence to enable a finding favorable to the nonmoving party." ATC Realty, LLC v. Town of Kingston, 303 F.3d 91, 94 (1st Cir. 2002)(quoting LeBlanc v. Great Am. Ins. Co., 6 F.3d 836, 842 (1st Cir. 1993)) (alteration in original)(internal quotation marks omitted).

"[W]hen the facts support plausible but conflicting inferences on a pivotal issue in the case, the judge may not choose between those inferences at the summary judgment stage." Coyne v. Taber Partners I, 53 F.3d 454, 460 (1st Cir. 1995). Furthermore, "[s]ummary judgment is not appropriate merely because the facts offered by the moving party seem more plausible, or because the opponent is unlikely to prevail at trial. If the evidence presented is subject to conflicting interpretations, or reasonable men might differ as to its significance, summary judgment is improper." Gannon v. Narragansett Elec. Co., 777 F. Supp. 167, 169 (D.R.I. 1991) (citation and internal quotation marks omitted).

**III. Discussion**

Plaintiff repeatedly asserts that there is no genuine issue of material fact in dispute. See Memorandum of Law for Summary Judgment ("Plaintiff's First Mem.")[10] at 1, 9; Memorandum

---

[10] Plaintiff's First Mem. was filed in support of his Motion for Summary Judgment (Dkt. #32). In citing to this memorandum, the Court disregards Plaintiff's pagination and treats the first page of the

Supporting Summary Judgment (Dkt. #37) ("Plaintiff's Second Mem.")[11] at 4; Plaintiff's Reply Memorandum (Dkt. #39) ("Plaintiff's Reply"), Attachment ("Att.") 1 (Plaintiff's Affidavit of 5/28/10) at 5;[12] Memorandum (Dkt. #43) ("Plaintiff's Third Mem.") at 3-4.  However, Plaintiff is mistaken.  Defendants have submitted affidavits from Douglass and Petty which directly contradict facts which the Court would have to find are undisputed in order to recommend that Plaintiff be granted summary judgment.  See Defenda[n]ts' Memorandum ("Defendants' Mem."), Att. 1 (Affidavit ("Petty's Aff.")); id., Att. 2 (Affidavit ("Douglass' Aff.")).  In addition, Defendants have disputed almost all of Plaintiff's Statement of Undisputed Facts (Dkt. #33) ("Plaintiff's SUF").[13]  See Defendants' Statement of

---

memorandum (which Plaintiff numbered "6") as page 1.

[11] Plaintiff's filing without permission of additional memoranda beyond his initial memorandum in support of the Motion and a reply memorandum violates this Court's Local Rules.  See District of Rhode Island Local Rule ("DRI LR") Cv 7(b)(3) ("No memorandum other than a memorandum in support of a motion, a memorandum in opposition, and a reply memorandum may be filed without prior leave of the Court.")

[12] The pages of Plaintiff's Affidavit of 5/28/10 are numbered 6 to 11.  The Court disregards this numbering, treats the first page of the Affidavit of 5/28/10 as page 1, and cites accordingly to the document.

[13] Neither Plaintiff's Statement of Undisputed Facts (Dkt. #33) ("Plaintiff's SUF") nor Defendants' Statement of Disputed Facts (Dkt. 36) ("Defendants' SDF") fully complies with this Court's Local Rules.  Plaintiff's SUF is deficient in that it does not identify the evidence establishing each fact.  See DRI LR Cv 56(a)(2) ("Each 'fact' shall be set forth in a separate, numbered paragraph **and shall identify the evidence establishing that fact, including the page and line of any document to which reference is made, unless opposing counsel has expressly acknowledged that the fact is undisputed.**")(bold added).  Defendants' SDF is deficient because the numbering of its paragraphs

Disputed Facts (Dkt. #36) ("Defendants' SDF").

Fairly reading Douglass' Aff., he swears: (1) that the document which he removed from Plaintiff's cell was "a discipline report pertaining to another high security inmate," Douglass' Aff. ¶ 3, that the "possession of another inmate's disciplinary reports violates the rules and regulations of the Department of Corrections and presents a security concern," id. ¶ 4, and that the document removed was "contraband," id. ¶ 3; (2) that he filed a disciplinary report in connection with this incident against Plaintiff for being in possession of contraband, see id., that Plaintiff was found guilty of this infraction by the disciplinary board and sanctioned to five days of disciplinary confinement,[14] see id. ¶ 5, that Douglass filed the disciplinary report because it was his opinion that Plaintiff had violated the rules of the

---

do not correspond to the numbering of the paragraphs of Plaintiff's SUF as required by DRI LR Cv 56(a)(3). See DRI LR Cv 56(a)(3) ("An objecting party that is contesting the movant's Statement of Undisputed Facts shall file a Statement of Disputed Facts, which shall be numbered correspondingly to the Statement of Undisputed Facts ...."). Defendants' SDF is also deficient because it does not identify the evidence establishing the dispute. See id. (requiring Statement of Disputed Facts to "identify the evidence establishing the dispute, in accordance with the requirements of paragraph (a)(2)"). The Court overlooks these procedural deficiencies and considers the evidence in the record bearing on the instant Motion.

[14] Plaintiff disputes this statement. See Plaintiff's Statement of Disputed Facts (Dkt. #40) ¶ 5 (citing Discipline Report No. 000087053). However, the report of the disciplinary hearing for this violation reflects that Plaintiff was found "GUILTY" and that he received five days of disciplinary confinement and five days of loss of good time as a sanction. See Motion for Summary Judgment (Dkt. #32), Attachment ("Att.") 2 at 4 (Result of disciplinary hearing for Discipline No. 000087053).

11

institution, see id. ¶ 6, and that Douglass did not discipline Plaintiff in retaliation for Plaintiff having filed grievances or lawsuits against other correctional employees, see id.; (3) that on March 9, 2010, Douglass drafted a disciplinary report against Plaintiff for willfully damaging or destroying state property because Douglass believed that Plaintiff had loosened a bolt that secured a metal plate under the desk in Plaintiff's cell, see id. ¶ 7, that loosening any type of hardware in a cell constitutes a security concern and violates the rules and regulations of the facility, see id. ¶ 8, that, although Plaintiff was found not guilty of the infraction by the disciplinary board and the charge was dismissed, Douglass filed the disciplinary report because it was his opinion that Plaintiff had violated the rules of the institution, see id. ¶¶ 9-10, and that Douglass did not discipline Plaintiff in retaliation for having filed grievances or lawsuits against other correctional employees, see id. ¶ 10.

Similarly, reading Petty's Aff. fairly, she swears that on September 15, 2009, she believed that Plaintiff had damaged his bedding in violation of Department rules, see Petty's Aff. ¶¶ 8-9, 11, and it can reasonably be inferred that she removed Plaintiff's bedding for this reason; that she filed a disciplinary report against Plaintiff for vandalism and for being in possession of two torn bed sheets, see id. ¶ 8; that vandalism of state property constitutes a security concern and violates the

12

rules and regulations of the facility, see id. ¶ 9; that, although Plaintiff was found not guilty of this infraction by the disciplinary board, Petty filed the disciplinary report (and presumably removed Plaintiff's bedding) because she believed that Plaintiff had violated the rules of the institution, see id. ¶¶ 10-11; and that she did not file the disciplinary report (and presumably remove Plaintiff's bedding) in retaliation for Plaintiff having filed grievances or lawsuits against other correctional employees, see id. ¶ 11.  Petty further swears that on November 20, 2009, Plaintiff was kicking and banging on his cell door, window, desk, and bed, see id. ¶ 3; that he refused to obey orders to stop, see id.; that Lt. Galligan responded to the scene and was forced to use a chemical agent against Plaintiff in order to restore order and calm him, see id.; that in Petty's opinion the use of the chemical agent against Plaintiff was proper and necessary to restore order to the facility and to calm Plaintiff and protect him from possibly harming himself; see id. ¶ 7; that Petty did not utilize any chemical agents on Plaintiff, nor did she urge or encourage Lt. Galligan to do so, see id. ¶ 6; that as a result of this incident Petty filed a disciplinary report against Plaintiff for kicking and banging on his cell door, window, desk, and bed, see id. ¶ 3; that Plaintiff pled guilty and admitted to this infraction before the disciplinary board and was sanctioned to twenty-one days of disciplinary

13

confinement, see id. ¶ 4; that Petty filed this disciplinary report because Plaintiff was attempting to damage his cell and could have injured himself, see id. ¶ 5; and that Petty did not discipline Plaintiff in retaliation for having filed grievances or lawsuits against other correctional employees, see id.

In sum, the affidavits limn differing versions of the truth which a factfinder must resolve. See Acosta v. Ames Dep't Stores, Inc., 386 F.3d 5, 8 (1st Cir. 2004)(explaining that nonmoving party can thwart motion for summary judgment only by showing through materials of evidentiary quality that a genuine dispute exists about some material fact and the evidence "must have substance in the sense that it limns differing versions of the truth which a factfinder must resolve at an ensuing trial"). Thus, Defendants by their affidavits have properly controverted the facts on which Plaintiff relies for summary judgment. See Jones v. Johnson & Wales Univ., C.A. No. 08-476ML, 2010 WL 3703516, at *3 (D.R.I. Aug. 20, 2010)("[T]o defeat a properly supported motion for summary judgment, the nonmoving party must establish a trial-worthy issue by presenting 'enough competent evidence to enable a finding favorable to the non-moving party.'")(quoting Goldman v. First Nat'l Bank of Boston, 985 F.2d 1113, 1116 (1st Cir. 1993)); see also Lewry v. Town of Standish, 984 F.2d 25, 27 (1st Cir. 1993)(noting that "[f]or summary judgment purposes, any fact not properly controverted is

admitted"). The statements in the affidavits are not merely "conclusory allegations, improbable inferences, and unsupported speculation." Meuser v. Fed. Express Corp., 564 F.3d 507, 515 (1st Cir. 2009). If believed by a jury, they would result in a verdict for Defendants.

In particular, I find that there is a genuine issue as to the following material facts:

(1) whether the document removed by Douglass from Plaintiff's cell was an "affidavit" as Plaintiff alleges, Amended Complaint at 2, or "a discipline report pertaining to another high security inmate" as Douglass swears, Douglass' Aff. ¶ 3;

(2) whether Douglass filed a false disciplinary report relating to this incident in retaliation for Plaintiff having filed a lawsuit against other correctional employees as Plaintiff alleges, see Amended Complaint at 3, or whether Douglass filed a true disciplinary report regarding the incident because he believed Plaintiff had violated the rules of the institution as Douglass swears, see Douglass' Aff. ¶ 6;

(3) whether Douglass filed a false disciplinary report against Plaintiff on March 9, 2010, and moved him to more adverse conditions of confinement in retaliation for filing lawsuits as Plaintiff alleges, see Amended Complaint at 6-7,

15

or whether Douglass took this action because he believed Plaintiff had loosened a bolt that secures a metal plate under a desk in Plaintiff's cell and such action by Plaintiff violated the rules and regulations of the facility as Douglass swears, Douglass' Aff. ¶¶ 7-8;

(4) whether Petty removed Plaintiff's bedding from his cell and filed a false disciplinary report relating to such action in retaliation for Plaintiff having filed a lawsuit against other correctional employees as Plaintiff alleges, see Amended Complaint at 4-5, or whether Petty did so because she believed Plaintiff had violated the rules of the institution as Petty swears, see Petty's Aff. ¶ 9;

(5) whether Petty pepper sprayed Plaintiff on November 20, 2009, as Plaintiff alleges, see Amended Complaint at 5, and Petty denies, see Petty's Aff. ¶ 6; and

(6) whether Petty filed a false disciplinary report relating to this incident in retaliation for Plaintiff having filed a lawsuit against other correctional employees as Plaintiff alleges, see Amended Complaint at 5-6, or whether Petty filed a true disciplinary report because Plaintiff was kicking and banging his cell door, window, desk, and bed in violation of the rules of the institution as Petty swears, see Petty's Aff. ¶¶ 3, 5.

Plaintiff asserts that "the documentary evidence," Plaintiff's Second Mem. at 3, demonstrates that there are no genuine issues of material fact, see id. By "documentary evidence," Plaintiff is presumably referring to affidavits from himself and Smith and copies of disciplinary hearing reports. See Motion for Summary Judgment, Att. 1 (Plaintiff's Affidavit of 4/26/10); Plaintiff's Reply, Att. 1 (Plaintiff's Affidavit of 5/28/10); Plaintiff's Affidavit of 6/1/10 (Dkt. #41); id., Att. 1 (Smith's Affidavit of 8/18/09); Plaintiff's Affidavit of 6/8/10 (Dkt. #42); Motion for Summary Judgment, Att. 2 (Smith's Affidavit of 5/31/10); id., Att. 2 at 3-4 (Offender Report for Discipline No. 000087053); id., Att. 2 at 6-7 (Offender Report for Discipline No. 000087661); id., Att. 2 at 9 (Offender Report for Discipline No. 000091874); id., Att. 2 at 10-11 (Offender Report for Discipline No. 000097699). Plaintiff contends, in essence, that the information in his and Smith's affidavits and in the disciplinary reports (or the absence of certain information in said reports) demonstrates that the statements in Douglass' and Petty's affidavits, especially their claims that they acted in good faith and not in retaliation, are unworthy of belief.[15] See Plaintiff's Second Mem. at 4 (asserting that

---

[15] Plaintiff also appears to be under the impression that the fact that one or more of the disciplinary charges resulted in a not guilty finding or a dismissal conclusively establishes that Douglass and/or Petty could not have had a good faith belief as to the validity of the charge(s). If so, Plaintiff is mistaken. It is entirely possible that Douglass and Petty could hold such beliefs and the disciplinary

17

"[a]ll of the documentary evidence indisputably substantiates the objective and the subjective culpability of the Defendants' unconstitutional conduct"). Thus, Plaintiff asserts that there are no genuine issues of material fact. See id.

This argument reflects a fundamental misunderstanding of summary judgment. This Court may not resolve credibility issues on summary judgment. See Abraham v. Nagle, 116 F.3d 11, 15 (1st Cir. 1997)("It was not, of course, open to the district judge to resolve credibility issues on summary judgment."); see also Domínguez-Cruz v. Suttle Caribe, Inc., 202 F.3d 424, 432 (1st Cir. 2000)("At the summary judgment stage ... the court should not engage in credibility assessments ...."); Simas v. First Citizens' Fed. Credit Union, 170 F.3d 37, 45 (1st Cir. 1999) (noting that "court cannot resolve genuine credibility issues at

---

board still find that the evidence was insufficient to support a guilty finding. See Tinsley v. Lomax, No. 90-15662, 1994 WL 441835, at *3 (9th Cir. Aug. 16, 1994)("[T]he 'not guilty' finding could mean simply that the administrator was unable to resolve the conflict between the various reports or elected not to subject [plaintiff] to further punishment because he had already spent two days in administrative segregation and neither of the guards was seriously hurt. Especially where prison officials had the burden of proof, the statement 'not guilty' is not equivalent to a factual finding that [plaintiff] did not assault Lomax.")(internal quotation marks omitted); United States v. Straach, 987 F.2d 232, 241 (5th Cir. 1993) ("An acquittal does not necessarily equate with a finding that the defendant was innocent. The not guilty verdict may be the result of compromise, confusion, leniency, and so forth."); see also Mutter v. Sanders, 611 F.Supp.2d 837, 848 (C.D. Ill. 2009)("[N]either a court's not guilty finding nor a prosecutor's dismissal of a charge means that probable cause is lacking."); cf. Greene v. Brown, 535 F.Supp. 1096, 1101 (E.D.N.Y. 1982)("Police officers who arrest without probable cause are not liable for civil rights claims if the officer believed in good faith that the arrest made was lawful and if this belief was reasonable.").

summary judgment"). Indeed, this Court is required to resolve all credibility issues in favor of the nonmoving party. Mosher v. Nelson, 589 F.3d 488, 492 (1st Cir. 2009)("All reasonable inferences and all credibility issues are resolved in favor of the nonmoving party."; Meuser v. Fed. Express Corp., 564 F.3d at 515 (cautioning that "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge")(alteration in original)(internal quotation marks omitted). Thus, for example, when Petty denies that she pepper sprayed Plaintiff, the Court is required to resolve that dispute in her favor. Similarly, when Petty and Douglass both deny that they filed false disciplinary charges and also deny that their actions were in retaliation for Plaintiff's protected activities, the Court may not weigh the evidence and find that such denials are unworthy of belief. Rather, the Court must accept these denials.

In sum, there are disputed issues of material fact which require that the Motion be denied. I so recommend.

**IV. Conclusion**

For the reasons stated above, I recommend that Plaintiff's Motion for Summary Judgment be denied. Any objections to this Report and Recommendation must be specific and must be filed with the Clerk of Court within fourteen (14) days of its receipt. See Fed. R. Civ. P. 72(b); DRI LR Cv 72(d). Failure to file specific

objections in a timely manner constitutes waiver of the right to review by the district court and of the right to appeal the district court's decision.  See United States v. Valencia-Copete, 792 F.2d 4, 6 (1st Cir. 1986); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603, 605 (1st Cir. 1980).


/s/ David L. Martin  
DAVID L. MARTIN  
United States Magistrate Judge  
October 5, 2010